May it please the Court, the issue in this case is whether a court can grant 3582C2 relief in an 11C1C case. Neither 3582C2 nor Rule 11C1C expressly preclude sentence modifications in an 11C1C case. 3582C2 merely requires that the sentence be, quote, based on a sentencing range that has subsequently been lowered by the Sentencing Commission. The statute does not state that a sentence imposed consistent with an 11C1C plea agreement cannot be based on a sentencing range, nor does it state that a sentencing range must be the sole basis for a sentence. Similarly, nothing in the rule compels a per se rule barring 3582C2 relief. It's a defense position that a sentence may be both a guidelines-based sentence eligible for treatment under 3582C2 and a sentence stipulated to by the parties in a plea agreement pursuant to 11C1C. As long as the sentence is based on the guidelines, even if it's also an 11C1C sentence, the district court should be free to exercise its discretion to determine whether a modification is appropriate under the unique facts of the case. So this case really does, as the last case, turn on the interpretation of the phrase, based on, in 3582C2. And it's notable that the phrase is based on versus based solely on. It's also notable that the phrase is based on versus within the sentencing guidelines range. In this case, the record is replete with evidence that the sentencing guidelines played a central role in the plea agreement and the ultimate sentence in this case. The plea agreement is Exhibit B of Appellate's Excerpts of Record, and there are a number of stipulations in the plea agreement itself that are related to the guidelines. The parties stipulated to a drug quantity on page 9, paragraph 8, and as the Court's well aware, drug quantities drive the guidelines. The parties also stipulated to a base offense level of 38 under the guidelines, and that's page 9, paragraph 9. The parties stipulated that the agreed-upon 228-month sentence was appropriate under the sentencing guidelines and pursuant to the other factors listed in 18 U.S.C. 3553A. And that's at page 10, paragraph 9, and I'd like to quote that. The parties agree that said sentence would be appropriate in this case both under the sentencing guidelines and pursuant to the other factors listed in 18 U.S.C. 3553A. The plea agreement even contains an acknowledgment by the defendant that the government will base its recommendation on factors set forth in the guidelines, and that's in paragraph 10 on page 10 where it says, the defendant understands and agrees that the United States will base its recommendations on factors set forth in the guidelines. On factors set forth in the United States sentencing guidelines, including section 3E1.1, which is the acceptance paragraph. So, an argument the government may make is that a sentence below the advisory guidelines range cannot be a guidelines-based sentence for purposes of 3582C2 purposes, and that argument necessarily fails because the guidelines themselves anticipate just such a scenario. Application note 3 to sentencing guideline 1B1.10, the policy statement regarding 3582C2 motions, anticipates circumstances where 3582C2 relief will be granted in the case of a below guidelines sentence. Quote, when the original sentence represented a downward departure, a comparable reduction below the amended guidelines range may be appropriate. In its briefing, the government points out that the sentence was below the advisory guidelines at the time of the sentencing, and would still be below the advisory guidelines even with the application of the crack amendments, but on the other hand, the government concedes that Bride's advisory range would be lower with the application of the crack amendments than it would be absent the application of the crack amendments, and that's in their brief. They note that it would go from 360 months to life to 324 months to life. So, thus, under the application notes, a comparable reduction below the amended guidelines range may be appropriate. It may be, and it may not be. The district court judge is best able to determine to what extent if any relief should be granted, given how fact-specific each case is. And that's really why it's not fair to establish a blanket rule and prevent the district court from even considering 3582 relief in the 11C1C case, because the district court, who knows the facts of the case and the history of the defendant, and who decided whether to accept the plea agreement in the first place, should be afforded the opportunity to assess, in light of the amendments to the guidelines, whether the sentence should be modified. There's nothing in 11C1C that says that the sentence is immutable for all time, and I would suggest that 11C1 sentences are really not cast in stone. They could be altered later by way of a Rule 35 motion, a pardon, or a commutation. And, similarly, if there's language in the plea agreement that says that based on post-plea conduct, between the time of the plea and the time of the sentencing, the government could ask for a higher sentence. Now, under the Rule 11C1C, there's language saying that it's binding on the court upon acceptance of the plea. Well, this plea was accepted by the court on September 23rd of 2005. Sentencing was until April 14th of 2006. Suppose, if you will, that there were some bad post-plea misconduct in that intervening period of months. Under the plea agreement, the government would be free to go in and say, I want more time. Would the court be bound by, under the rule, and say, whoa, under 11C1C, I'm bound by the plea agreement, so even though there was all this post-plea misconduct, you know, I can't do anything about it. You can ask for it, but my hands are tied. Clearly, that wouldn't happen. And I think some of this language about how the court is bound by 11C1C plea agreements once they accept the plea, it's really, it depends on what you mean by bind. Would anyone actually ask the district court to specifically perform on this binding agreement? No. I think it's well-recognized that the relief, if the court doesn't follow the so-called binding plea agreement, is that the parties may withdraw the plea, not that they can enforce specific performance on the part of the district court. And there's actually a... That's absolutely correct. And I think that that actually shows to the extent that the court relied on the guidelines and 3553A factors and didn't feel bound solely by the 11C1C plea agreement. If you'll look at the supplemental excerpts of records on page 33, that's where the court ultimately imposes sentence and where the court makes its findings under the guidelines. The court finds that the base level offense is 42, the criminal, as opposed to the 38 in the plea agreement. The criminal history is two and the range is 360 months to life. The recommendation in the 11C1C plea is for 19 years, which according to my calculations is 228 months. But then the court goes on to say the factors, the court has considered the factors contained at 18 U.S.C. 3553A, given the serious of the offense and its widespread impact on the community and the need to impose a punishment that reflects the seriousness of the crime. It's the judgment of the court that Mr. Gray shall be committed to the custody of the United States Bureau of Prisons for a term of 228 months. So it seems clear from the court's own rationale around the recitation of the actual sentence that it's looking at the guidelines, it's looking at the 3553A factors, and it's deciding to adopt the plea agreement. But it certainly can't, he said, that the court was simply following the plea agreement without regard to the guidelines. And I think that that's a difference between this and some other cases. For example, a case where there's cooperation. I think some of the case law in these cases cites to a case Cieslawski, 410 Federal 3rd, 353, 364, that says a sentence imposed under Rule 11C1C plea arises directly from the agreement itself. And it makes me think of Botticelli's Venus arising fully formed as a woman from the sea or the immaculate conception. But I think in reality, federal sentences have more earthbound origins. And while another may be an 11C1C plea agreement, there's a father to, and oftentimes, not always, the father is the sentencing guidelines. Sometimes the father of the sentence is cooperation. And in that case, where it's cooperation, that's a statutory basis rather than a guidelines basis for the plea. Thank you, counsel. We'll give you a minute for rebuttal. Good morning. May it please the court, my name is Helen Bruner. I'm an assistant United States attorney for the Western District of Washington here to represent the United States in this case. While counsel and I may agree as to what the issue is before this court, that is to say whether or not the district court has discretion to sentence, to reduce a sentence pursuant to 3582C2 in the context of a sentence that was imposed where the district court accepted an 11C1C plea, that's where our agreement begins and ends. The government plainly takes the position that in this case and in every 11C1C plea agreement where the district court accepts that agreement, the court then binds itself to the recommendation of the parties, in this case, the 19-year sentence that the parties agreed to with respect to Mr. Bride. The district court, once the district court chose to accept that agreement, could not impose a different sentence and, in fact, if the court wanted to impose a different sentence, it would have had to allow the government or the defendant or both to withdraw from the agreement. That is the genesis of an 11C1C plea. So it is for that reason that I say that the sentence is based on the agreement. Now, the agreement of the parties could no doubt take into consideration the sentencing guidelines. Clearly, that's part of negotiations when both the defendant and the government are looking at the possible outcomes of the case and why they should resolve it in a particular manner. If the plea agreement said, instead of, you know, a figure of years, like say 19 years, it said, you know, the parties agree to a sentence within ranges, whatever it is, 18 to 20, right? Okay. Then would it be based on a guideline range? It would be, wouldn't it? No, Your Honor. I would say still no. And the reason for that is, again, because whether or not the parties reached an agreement prior to entry of the plea as to what they believe the range should be and, therefore, wanted to bind the district court to that range and a sentence within that range to ensure both parties got certainty with respect to sentencing because, after all, that's the basis for an 11C1C plea. That does not mean that the sentence itself was guideline-based. Well, inevitably, it would be if the judge is sentencing within a certain range. Isn't that true? Surely. Surely. So, I mean, isn't the argument really on whether or not this specific sentence was a product of an agreement and not necessarily whether it's an 11C1 agreement? I mean, the form of the agreement in this case, I understand why, if you've got an 11C1C agreement, it takes on a certain characteristic. But if the agreement itself provides for a guideline range, wouldn't that create a different circumstance? I don't believe so, Your Honor. And the reason for that is because of the binding nature of the 11C1C plea. Let's just assume hypothetically now that Mr. Bryde's 19-year sentence, rather than just specifying here that the guideline, the base offense level was 38, without addressing, as it did, this plea agreement did not address, for example, leadership role or firearms enhancement, which ultimately were applied here. But let's just say we stipulated to a range that included the 228-month sentence. That still would mean that the government's plea in this case was a consideration of its likelihood of success at trial. It gave up, in the context of this case, a 924C count, which would have added a mandatory five years on the topic. So you can reach a plea agreement and still have the sentence based upon the guideline, right? Absolutely, Your Honor, in the sense that that would be the starting point for the negotiations. We don't dispute that, in the least. It's the ending point, too, though. You can agree, as Judge Thomas says, we agree to a sentence at level 38, category 2, or whatever it is. But, Your Honor, at the end of the day- Just to amplify on that. So then you go to sentencing on such a stipulation, and both sides argue for the lower or the high end of the particular guideline range. Does that make it a guideline sentence, even though there's an underlying 11C1 agreement? Again, Your Honor, I think not. Because at the end of the day, the genesis of that agreement, the binding nature of that agreement, is what controls. Let's say it is a guideline. We said it was a guideline sentence. Now, if this court, for example, were to remand, I think the remedy for the government is to withdraw from that agreement, if the court were to impose something less than 19 years. I think what you're saying is, you know, the statutory language, based upon the guideline range or whatever it is, doesn't include, based on a guideline range agreed to by the parties, that's below the guideline range that would be reached under ordinary calculations, something like that. Isn't that what you're saying? No, I think I'm saying, Your Honor, that it doesn't- I mean, if I could paraphrase what language I suppose I'd like to see in the statute so that this matter would be clear and I wouldn't be standing here, I would say that so long as the guideline range was reached by the parties, was included in a binding plea agreement under Rule 11C1C and accept that out. But it does come, I think, from the government's point of view back to the binding nature of the plea agreement, because contrary to, I think, what counsel asserted in argument, a binding Rule 11C1C plea, really the only way to alter the outcome is either for the court not to accept that plea agreement or the parties together to reach a different agreement and come to the court and ask, undo the binding nature of the agreement, if you will, by their own agreement, further agreement. If the parties in the plea agreement reserved the right, if it was a change in the guidelines that was retroactive and people could apply for downward, that even this, although this was a Rule 11 plea, they could come back. Now, you wouldn't dispute that, would you? No. If that was part of the agreement of the parties, certainly that would be, then again we would be back within the confines of the agreement and the court could then sentence according to the party's agreement. Right. And maybe it's talking form over substance, but it's not the fact of the 11C1C agreement that the agreement is under the aegis of 11C1C rather than it's an agreement, isn't it? I'm not sure. In other words, if it's an agreement rather than a decision based on the guidelines, that's the touchstone, not necessarily whether it comes under 11C1C, right? Actually, I think it is because it comes under 11C1C and it is the binding nature of that agreement. Because if you were, for example, to enter any, we frequently enter into plea agreements where the parties set forth their understanding. Let me follow up on Judge Fletcher's question, if you don't mind, because let me play this. Let's assume her hypothetical and the government says no to the district court, you cannot reduce the sentence because it's 11C1C and you argue on appeal, this is 11C1C, you can't touch this. But the agreement provides otherwise. You would concede that we'd have authority, as would the district court, to enforce the terms of the agreement and allow a remand, right? Your Honor, that's correct. I think if the government had agreed as part of its 11C1C plea to say if there is a retroactive amendment to the guidelines, this could be reduced consistent with that, we would be in breach. Right, so it's not the fact of 11C1C that strips the court of power. It's the question of whether there's an agreement, how to effectuate the terms of the agreement. If you're seeing what I'm driving at. I do, Your Honor. If you adopt the blanket rule saying if you have an 11C1C agreement that's approved by the court, then the role of the court is over forever, I don't think that's quite correct. I do. Depending on the nature of the agreement. Depending on the nature of the agreement, but again, within the context of Judge Fletcher's hypothetical, again, it would be in the context of the 11C1C agreement of the parties. If this had been, for example, an agreement where we had stipulated to the guidelines calculations as part of an 11C1A or C1B plea, then we wouldn't be standing here today. The defendant could have filed his motion because this was a post-booker sentence. If the court had concluded that the appropriate sentence, the reasonable sentence, was 19 years, we would be dealing with an entirely different case. It's for that reason that I say the 11C1C nature of the plea is a critical matter. Any further questions? No. Thank you very much, Your Honor. Thank you, Your Honor. And we'll give you a minute for a button. Thank you, Your Honor. I'd like to sort of flip Judge Fletcher's hypothetical around. I think if we're going to look at contract analysis that the parties actually could have contracted, they could have bargained away the right to seek 3582C2 relief. In other words, they could have included a paragraph in the plea agreement saying, we recognize that the guidelines may one day be amended, and we agree not to seek relief under 3582C2 if that happens, just as sometimes people bargain away their appellate rights. But the parties didn't agree to that, and just as you wouldn't assume that someone waived their appellate rights unless it was bargained for, we shouldn't assume a 3582C2 waiver in a plea agreement. And I turned the Court's attention to the dissent. Unfortunately, it's kind of been a bad couple of weeks for me with the recent decisions coming down in Sanchez and Skerlark. But the dissent in Sanchez, which counsel just provided yesterday, I think it came down on the 3rd, talks about this fundamental assumption principle in contract law, where if the parties have made a fundamental assumption, such as this is what the drug quantity guidelines are, and then that is subsequently changed, if you can show that your fundamental assumptions have been shaken, you can rescind the contract. And I think that's a valuable argument, so I encourage the Court to look at the dissent. Thank you. Thank you, counsel. The case is heard and will be submitted for decision.
judges: B. Fletcher, Tashima, Thomas, Cjj